1

2

3

4

5              UNITED STATES DISTRICT COURT

6              EASTERN DISTRICT OF WASHINGTON

7   HEIDI HAZELQUIST,

                                         NO:  2:14-CV-0073-TOR
8                    Plaintiff,
                                         ORDER GRANTING MOTIONS FOR
9        v.                              SUMMARY JUDGMENT

10  OFFICER STEPHAN,[1] OFFICER
    KLEWIN, PAT HULL, and
11  WASHINGTON STATE PATROL,

12                   Defendants.

13

14       BEFORE THE COURT are Defendants Washington State Patrol and Dustin

15  Stephan's Motion and Memorandum for Summary Judgment (ECF No. 60) and

16  Defendant Pat Hull's Motion for Summary Judgment (ECF No. 66).  These matters

17  were submitted for consideration without oral argument.  Richard D. Wall

18  _____

19  [1] The Clerk of Court shall modify the docket to reflect the correct spelling of

20  Officer Stephan's name.

ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT ~ 1

represents Plaintiff.  Carl P. Warring represents Defendants Washington State

Patrol and Dustin Stephan.  Paul L. Kirkpatrick and Timothy J. Nault represent

Defendant Patricia Hull.  The Court has reviewed the briefing and the record and

files herein, and is fully informed.

## BACKGROUND

Plaintiff, initially proceeding *pro se*, filed her Complaint in this action on

March 28, 2014.[2]  Plaintiff asserts that, after a traffic stop, she was unlawfully

arrested and involuntarily committed to a mental health facility.  ECF No. 9.  This

Court construes Plaintiff as alleging state law claims for defamation, malicious

prosecution, assault, and false imprisonment, as well as federal claims under 42

U.S.C. § 1983 for false arrest and involuntary commitment.  In the instant motions,

certain Defendants move for summary judgment on all claims.[3]  ECF Nos. 60, 66.

For the reasons discussed below, this Court grants these motions.

///

///

_____

[2] Although Plaintiff has repeatedly moved for leave to file an amended complaint,

which motions this Court has granted, Plaintiff has either withdrawn her motions

or failed to file an amended complaint.  *See* ECF Nos. 17, 20, 21, 23, 44, 45.

[3] Defendant Officer Klewin has not filed his own motion for summary judgment or

otherwise joined the moving Defendants' motions.

ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT ~ 2

# FACTS[4]

On September 5, 2011, Defendant Stephan stopped Plaintiff Heidi Hazelquist at the east bound I-90 on ramp near Ritzville, Washington.  ECF Nos. 61 at 7; 75 at 1-2; 77 at 2; 82 at 2.  According to Defendant Stephan's Patrol Report, he observed Plaintiff using her cell phone while operating a motor vehicle, driving her vehicle into the oncoming lane of traffic, and driving her vehicle from the right lane of the freeway to the middle lane without use of her turn signal.  ECF No. 61 at 7.  Plaintiff admits that she "swerved" while entering the freeway, attributing her behavior to a cup of spilled coffee.  ECF Nos. 3 at 2; 82 at 2.

When Defendant Stephan made contact with Plaintiff, he noticed she spoke with slurred speech.  ECF Nos. 61 at 7; 75 at 2.  Plaintiff indicated that she suffered from a disability, which adversely affected her speech and balance.  ECF Nos. 61 at 7; 77 at 1-2; 82 at 1-2.  Plaintiff contends she tried to show her disability card to Defendant Stephan but he refused to look at it, ECF No. 82 at 3; Defendant Stephan asserts that Plaintiff was unable to produce any documentation of her

---

[4] The following are the undisputed material facts unless otherwise noted.  A statement in a complaint may serve as a judicial admission unless the party explains the error in a subsequent pleading or by amendment.  *Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848, 859 (9th Cir. 1995).

ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT ~ 3

condition, ECF Nos. 61 at 7 (noting that the disability card Plaintiff presented did not list her disabilities); 75 at 2.

Defendant Stephan asked Plaintiff to step out of her car. ECF Nos. 61 at 7; 75 at 2; 77 at 2; 82 at 2. According to his Patrol Report, Defendant Stephan observed that Plaintiff "staggered and swayed crossing her feet and was unable to walk in a straight line." ECF No. 61 at 7. Defendant Stephan asked Plaintiff if she would be willing to perform field sobriety tests, which request she declined in light of her coordination issues. ECF No. 61 at 7, 26; *see* ECF No. 82 (failing to dispute).

Defendant Stephan ultimately arrested Plaintiff for driving under the influence of drugs. ECF Nos. 61 at 8, 14, 17; 75 at 3; 82 at 2. Once in the patrol vehicle, Plaintiff consented to a portable breath test, which registered a reading of .000. ECF Nos. 61 at 8; 75 at 3; 77 at 2; 82 at 2. Defendant Stephan then transported Plaintiff to a local hospital for a blood draw, which test similarly showed no intoxicants in Plaintiff's system. ECF Nos. 75 at 4; 77 at 2. Plaintiff was subsequently released from custody and transported to a nearby hotel. ECF Nos. 61 at 8-9; 75 at 4; 77 at 2; 82 at 3.

Approximately one hour later, Defendant Stephan received a report that a woman matching Plaintiff's description was located on an I-90 overpass. ECF Nos. 61 at 9; 75 at 4. Defendant Stephan and Trooper Herrington again made

contact with Plaintiff, observing her leaning over the concrete barrier.  ECF Nos. 61 at 9; 75 at 4.  According to his Patrol Report, Defendant Stephan thought Plaintiff may have been contemplating suicide and had allegedly been informed by Trooper Herrington that Plaintiff said she was going to jump in front of a semi-truck.  ECF No. 61 at 9, 14.  Plaintiff adamantly denies that she ever intended to jump or said anything to that effect; however, her pleadings appear to concede that she presented herself as someone that was contemplating jumping.  ECF Nos. 77 at 3,5; 82 at 3; *see* ECF Nos. 9 at 3 ("I knew if I stood on the over pass, eventually the police would come to prevent a person from jumping. They will help me direct [Trooper Stephan's] actions to internal affairs."); 10 at 18 ("[I] knew [I] would be there a while because if [I] stood on the over pass eventually [I] thought the police would come to prevent a person from jumping.").  Indeed, in her Complaint, Plaintiff asserts she told the arriving officers that she was "not going to jump off" the overpass.  ECF No. 9 at 3.

Trooper Herrington transported Plaintiff to East Adams Rural Hospital for mental health evaluation.[5]  ECF Nos. 61 at 9, 14; 75 at 5; 77 at 3.  Defendant Patricia Hull, a Designated Mental Health Professional with Adams County, had

---

[5] According to her report, Trooper Herrington first attempted to book Plaintiff in the Adams County jail but was advised that Plaintiff needed to first be medically cleared.  ECF No. 61 at 4.

ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT ~ 5

received a request from law enforcement to evaluate Plaintiff.  ECF No. 65-5 at 2-3.  Defendant Hull asserts that Washington State Patrol ("WSP") informed her that Plaintiff was contemplating suicide.  ECF Nos. 65 at 3; 65-3 at 3 ("DMHP Hull was requested for face to face evaluation of [Plaintiff] . . . after being found on Highway overpass determining best way to commit suicide.").

Defendant Hull interviewed Plaintiff, describing Plaintiff as "agitated and angry" and "uncooperative."  ECF No. 65 at 3.  In the course of her investigation, Defendant Hull learned that Plaintiff had suffered a traumatic brain injury in 1997, which left her with right side impairment, slurred speech, and poor coordination.  *Id.* at 4.  Defendant Hull reported that Plaintiff confessed to difficulty sleeping, past contemplations of suicide, and many stressors in her life.  *Id.*  Defendant Hull also maintains that Plaintiff acknowledged her suicidal thoughts while standing on the overpass.  *Id.*  Plaintiff adamantly denies having any suicidal thoughts or confessing to such thoughts to Defendant Hull.  ECF No. 77 at 4.  The parties dispute whether Defendant Hull ever spoke with Plaintiff about developing a crisis plan.  ECF Nos. 65 at 5; 77 at 3, 6.

Dr. Betty Mitchell, an emergency room physician, also examined Plaintiff while she was at the hospital and similarly represents that Plaintiff was contemplating suicide.  ECF No. 65-4 at 6 ("Patient stated that she was at the overpass/bridge contemplating/considering jumping in front of a truck to 'end it

ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT ~ 6

all.' Then she decided that a truck was too 'messy' and not fair to truck driver so then she mentioned sitting in front of a train instead. She stated several times that she has seen the world and is 'ready to go.'")[6] In her Complaint, Plaintiff contends that Dr. Mitchell "misstates the words and meaning of the talk;" however, she also concedes that she "elaborated on all the heavy issues [she] had lately." ECF No. 9 at 4-5. Defendant Hull took the observations of Dr. Mitchell into consideration when determining whether to commit Plaintiff. ECF No. 65-6 at 6.[7]

[6] Plaintiff objects to these statements as inadmissible hearsay. However, these statements are non-hearsay. First, any statements made by Plaintiff are admissible as admissions by a party opponent. Fed. R. Evid. 801(d)(2)(A). Second, Dr. Mitchell's written statements are not presented to prove the truth of the matter asserted but instead are used to show the effect of these statements on Defendant Hull and her ultimate decision to commit. *See id.* at 801(c); *United States v. Payne*, 944 F.2d 1458, 1472 (9th Cir. 1999) (explaining that out-of-court statements introduced to show the effect on the listener, rather than to prove the truth of the matter asserted, are non-hearsay statements).

[7] At some point during her hospital stay, Plaintiff asserts that she was "attacked and thrown to the ground by a uniformed officer who had come into the waiting room," handcuffed, and attached to a gurney against her will. ECF No. 77 at 4. In response, Defendant Hull explains that it was necessary to call in law enforcement

Based on Defendant Hull's interview and independent investigation, as well as Dr. Mitchell's documented observations, Defendant Hull formed the provisional diagnosis that Plaintiff suffered from major depression, recurrent, unspecified. ECF No. 65 at 6.  Defendant Hull recommended that Plaintiff be taken into emergency custody in an evaluation and treatment facility for a period not to exceed seventy-two hours pursuant to RCW 71.05.  *Id.*  Plaintiff was subsequently transferred to Lourdes Counseling Center in Richland, Washington.  ECF Nos. 65-5 at 8; 77 at 4.  In her Petition for Initial Detention, filed September 6, 2011, with Adams County Superior Court, Defendant Hull stated the following facts in support of her conclusion that Plaintiff presented a serious likelihood of harm to herself:

> [Plaintiff's] story is inconsistent and contradictory. [She] claimed to have left the motel in search of 'Rockstar drink' but was found in opposite direction of motel past the places to purchase drinks. She states she was at the overpass evaluating best place & method to commit suicide. 'I don't want to land on a truck, I want to land in front of the truck.' While respondent reports she [was] willing to develop a safety plan she is refusing to engage in the process such as notifying family developing a support system. [Plaintiff] has attempted to leave the hospital & required restraints.

to restrain Plaintiff as she attempted to leave.  ECF Nos. 65 at 6; 65-3 at 28 ("[I]t was necessary to request a police officer to stand by, [Plaintiff] still attempted to leave and the officer used handcuffs to restrain her.  When the officer needed to leave the hospital, the doctor ordered restraints.").

ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT ~ 8

ECF No. 69-4 at 2.

On March 28, 2014, Ms. Hazelquist filed the instant lawsuit. In her briefing, Plaintiff has conceded that several of her claims are barred.[8] This Court considers the following claims: (1) a section 1983 claim against Defendant Stephan for unlawful seizure; (2) a section 1983 claim against Defendant Hull for involuntary confinement; and (3) state law claims against Defendants WSP, Stephan, and Hull for malicious prosecution. ECF No. 9.

## DISCUSSION

Summary judgment may be granted to a moving party who demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact.

---

[8] Plaintiff's Complaint can be construed to allege state law claims for defamation, assault, and false imprisonment; however, as Plaintiff has conceded in her briefing, these claims are barred by Washington's two-year statute of limitations. ECF Nos. 83 at 1; 76 at 1; *see* RCW 4.16.100(1); *Unisys Corp. v. Senn*, 99 Wash.App. 391, 397-98 (2000). Plaintiff further concedes that her claims pursuant to 42 U.S.C. § 1983 against WSP are barred by the Eleventh Amendment. ECF No. 83 at 1; *see* U.S. Const. Amend. XI; *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 63-64 (1989).

ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT ~ 9

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the

non-moving party to identify specific facts showing there is a genuine issue of

material fact.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

"The mere existence of a scintilla of evidence in support of the plaintiff's position

will be insufficient; there must be evidence on which the [trier-of-fact] could

reasonably find for the plaintiff."  *Id.* at 252.

For purposes of summary judgment, a fact is "material" if it might affect the

outcome of the suit under the governing law.  *Id.* at 248.  A dispute concerning any

such fact is "genuine" only where the evidence is such that the trier-of-fact could

find in favor of the non-moving party.  *Id.*  "[A] party opposing a properly

supported motion for summary judgment may not rest upon the mere allegations or

denials of his pleading, but must set forth specific facts showing that there is a

genuine issue for trial."  *Id.* (internal quotation marks omitted); *see also First Nat'l*

*Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968) (holding that a party

is only entitled to proceed to trial if it presents sufficient, probative evidence

supporting the claimed factual dispute, rather than resting on mere allegations).

Moreover, "[c]onclusory, speculative testimony in affidavits and moving papers is

insufficient to raise genuine issues of fact and defeat summary judgment."

*Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  In ruling

upon a summary judgment motion, a court must construe the facts, as well as all

ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT ~ 10

rational inferences therefrom, in the light most favorable to the non-moving party, *Scott v. Harris*, 550 U.S. 372, 378 (2007), and only evidence which would be admissible at trial may be considered, *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).

**A. Section 1983 Claims**

Based on this Court's reading of Plaintiff's Complaint, this Court discerns two causes of action under 42 U.S.C. § 1983: unlawful seizure under the Fourth Amendment against Defendant Stephan[9] and involuntary commitment under the

---

[9] Despite Defendant Stephan's invocation of the Eleventh Amendment, "it has been settled that the Eleventh Amendment provides no shield for a state official confronted by a claim that he deprived another of a federal right under the color of state law." *Hafer v. Melo*, 502 U.S. 21, 30 (1991) ((quoting *Scheuer v. Rhodes*, 416 U.S. 232, 237 (1974)). "That is, the Eleventh Amendment does not erect a barrier against suits to impose 'individual and personal liability' on state officials under § 1983." *Id.* at 30-31 (quoting *Scheuer*, 416 U.S. at 238). Defendant Stephan is not sued in his official capacity and is thus properly subject to a section 1983 personal-capacity suit. *See id.* at 26 ("[T]he phrase 'acting in their official capacities' is best understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury.").

Fourteenth Amendment against Defendant Hull.[10]  *See* ECF No. 9.  A cause of action pursuant to section 1983 may be maintained "against any person acting under color of law who deprives another 'of any rights, privileges, or immunities secured by the Constitution and laws' of the United States."  *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 887 (9th Cir. 2003) (quoting 42 U.S.C. § 1983).  The rights guaranteed by section 1983 are "liberally and beneficently construed."  *Dennis v. Higgins*, 498 U.S. 439, 443 (1991) (quoting *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 684 (1978)).

## 1.  Unlawful Seizure

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  "A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment provided the arrest was without probable cause or other justification."  *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 918 (9th Cir. 2012) (en banc) (quoting *Dubner v. City & Cnty. of S.F.*, 266

---

[10] To the extent Plaintiff's malicious prosecution claim is brought under section 1983, she has "not alleged that any process resulting in the initiation of criminal proceedings followed [her] arrest" and she cannot "simply recast the false arrest claim as a claim for malicious prosecution."  *See Lacey v. Maricopa Cnty.*, 693 F.3d 918, 920 (9th Cir. 2012) (en banc).

ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT ~ 12

F.3d 959, 964 (9th Cir. 2001)).  "Probable cause exists when, under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that a crime was committed." *Gasho v. United States*, 39 F.3d 1420, 1428 (9th Cir. 1994) (internal quotation marks omitted).

This Court finds there can be no genuine dispute that Defendant Stephan had probable cause to arrest Plaintiff for driving under the influence in violation of Washington state law.  Under Washington law, a person may not operate a motor vehicle while under the influence of or affected by intoxicating liquor, marijuana, or any other drug.  RCW 46.61.502(1)(c).  At the time of Plaintiff's arrest, the following facts and circumstances were within Defendant Stephan's knowledge: (1) Plaintiff drove into the oncoming traffic lane and "swerved" across the freeway lanes without use of a turn signal; (2) when Defendant Stephan made contact with Plaintiff, Plaintiff exhibited slurred speech and the inability to maintain balance and walk in a straight line; and (3) before arrest, Plaintiff refused to complete field sobriety tests.   Plaintiff does not dispute that she "swerved" while driving on the freeway, that Defendant Stephan pulled her over shortly thereafter, and that she exhibited slurred speech and impaired coordination.  Although Plaintiff's breath and blood tests, post-arrest, demonstrated that Plaintiff was not in fact under the influence of any intoxicant, this after-the-fact determination does not diminish the

probable cause that existed at the time of arrest.  Accordingly, because Defendant Stephan had probable cause to arrest Plaintiff based on the undisputed facts, this Court grants summary judgment to Defendant Stephan on this claim.

### 2.  Involuntary Commitment

"Courts repeatedly have echoed the Supreme Court's admonition that involuntary civil commitment to a mental hospital represents a 'massive curtailment of liberty' and that such a commitment therefore most comport with the requirements of due process." *Jensen v. Lane Cnty.*, 312 F.3d 1145, 1146 (9th Cir. 2002) (citing *Vitek v. Jones*, 445 U.S. 480, 491-92 (1980)).  "In general, due process precludes the involuntary hospitalization of a person who is not both mentally ill and a danger to one's self or to others." *Id.* at 1147 (citing *O'Connor v. Donaldson*, 422 U.S. 563, 575 (1975)).

Defendant Hull is entitled to a qualified immunity analysis on this claim. Qualified immunity shields government actors from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.*

In evaluating a state actor's assertion of qualified immunity, a court must determine (1) whether the facts, viewed in the light most favorable to the plaintiff, show that the defendant's conduct violated a constitutional right; and (2) whether the right was clearly established at the time of the alleged violation such that a reasonable person in the defendant's position would have understood that his actions violated that right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson*, 555 U.S. 223. To determine whether a right is "clearly established," courts consider the following:

> [The contours of the right] must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (internal citations omitted). A court may, within its discretion, decide which of the two prongs should be addressed first in light of the particular circumstances of the case. *Pearson*, 555 U.S. at 236. If the answer to either inquiry is "no," then the defendant is entitled to qualified immunity and may not be held personally liable for his or her conduct. *Glenn v. Wash. Cnty.*, 673 F.3d 864, 870 (9th Cir. 2011).[11]

---

[11] When determining whether there are any genuine issues of material fact at the summary judgment stage in the context of qualified immunity, "determinations that

For purposes of the qualified immunity analysis, the Ninth Circuit's opinion in *Jensen v. Lane County* constitutes clearly established law.  In *Jensen*, the Ninth Circuit addressed what level of certainty due process requires in the context of an involuntary, short-term emergency commitment: "In the context of a short-term emergency hold . . . by definition there is no prior adjudication of the detainee's condition, because the very purpose of the hold is to evaluate whether the person is mentally ill and dangerous and thus should be subjected to such an adjudication." 312 F.3d at 1147.  Nonetheless, "due process does demand that the decision to order an involuntary emergency commitment be made in accordance with a standard that promises some reasonable degree of accuracy." *Id.*  To comport with due process, mental health professionals must exercise judgment "on the basis of *substantive and procedural criteria that are not substantially below the standards*

---

turn on questions of law, such as whether the officers had probable cause or reasonable suspicion to support their actions, are appropriately decided by the court." *Hopkins v. Bonvicino*, 573 F.3d 752, 763 (9th Cir. 2009) (citing *Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993)).  "However, a trial court should not grant summary judgment when there is a genuine dispute as to the 'facts and circumstances within an officer's knowledge' or 'what the officer and claimant did or failed to do.'" *Id.*

ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT ~ 16

*generally accepted in the medical community.*" *Id.* (quoting *Rodriguez v. City of N.Y.*, 72 F.3d 1051, 1063 (2d Cir. 1995)).

Washington's involuntary commitment statutory scheme, which has been held to be facially sufficient to meet the requirements of due process and under which Plaintiff was detained, *see In re Detention of June Johnson*, 179 Wash.App. 579, 591 (2014), provides for the following process regarding involuntary emergency commitment:

> When a designated mental health professional receives information alleging that a person, as the result of a mental disorder, presents an imminent likelihood of serious harm,[12] or is in imminent danger because of being gravely disabled, after investigation and evaluation of the specific facts alleged and of the reliability and credibility of the person or persons providing the information if any, the designated mental health professional may take such person, or cause by oral or written order such person to be taken into emergency custody in an evaluation and treatment facility for not more than seventy-two hours as described in RCW 71.05.180.

---

[12] RCW 71.05.020(25) defines "likelihood of serious harm" as a "substantial risk . . . that [p]hysical harm will be inflicted by a person upon his or her own person, as evidenced by threats or attempts to commit suicide or inflict physical harm on oneself." "Imminent" is when harm can "occur at any moment or near at hand." RCW 71.05.020(20).

ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT ~ 17

RCW 71.05.153(1).[13]   The mental health professional must examine the person within three hours of arrival at the mental health facility; a determination of whether the person meets emergency detention criteria must be made within twelve hours.   RCW 71.05.153(4).   In conducting an evaluation under RCW 71.05.153, a mental health professional "must consult with any examining emergency physician regarding the physician's observations and opinions related to the person's condition, and whether, in view of the physician, detention is appropriate;" "take serious consideration of observations and opinions by examining emergency room physicians in determining whether detention . . . is appropriate;" and document such consultation.  RCW 71.05.154.  Further, the mental health professional must, on the judicial day following detention, file a petition for initial detention along with other required filings.  RCW 71.05.160.

Whether or not Defendant Hull violated Plaintiff's due process rights when she made the decision to detain Plaintiff, Defendant Hull is entitled to qualified immunity.   In light of the undisputed facts, no reasonable official in the shoes of Defendant Hull would have known her decision to detain violated Plaintiff's clearly established due process rights under *Jensen*.

---

[13] Plaintiff does not challenge the constitutional sufficiency of Washington's involuntary commitment statute.

ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT ~ 18

First, both the Washington State Patrol and Dr. Mitchell informed Defendant Hull that Plaintiff presented a suicide risk and thus an imminent likelihood of serious harm to herself. *See* RCW 71.05.020(20), (25). Although Plaintiff adamantly denies that she was attempting to commit suicide or that she ever said anything to this effect, she does not dispute that this information was relayed to Defendant Hull. Further, Plaintiff concedes that her position on the I-90 overpass gave the appearance of someone who was going to jump—indeed, the first comment she made to the officers was that she was not going to jump—and she further admits that, during her examination with Dr. Mitchell, she "elaborated on all the heavy issues" with which she had been dealing. Second, Defendant Hull personally interviewed Plaintiff and conducted an independent investigation into Plaintiff's mental health history, contacting other health agencies in Montana and Washington in an attempt to gain diagnostic information regarding Plaintiff's condition. Third, Defendant Hull consulted with Dr. Mitchell, an examining physician, to help form her provisional diagnosis and ultimately determine detention was appropriate. Finally, Defendant Hull promptly filed a petition for detention with the appropriate court following Plaintiff's transfer to Lourdes.

Plaintiff's opposition misses the mark. Plaintiff's declaration—the only evidence presented to support Plaintiff's position—fails to present a genuine dispute as to whether Defendant Hull's decision violated clearly established law.

ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT ~ 19

Although Plaintiff unyieldingly asserts that she never told anyone she was contemplating suicide, her declaration fails to create a genuine dispute as to whether she *presented* herself as someone who may pose an imminent and serious risk of harm to herself and thus may need further mental health treatment.  Indeed, Plaintiff admits she presented herself in this way to get the attention of the police. *See e.g.,* ECF Nos. 9 at 3 ("I knew if I stood on the over pass, eventually the police would come to prevent a person from jumping.").  No trier-of-fact, based on the evidence presented, could find otherwise.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248 (explaining that a dispute about a material fact is "genuine" if the evidence is such that a trier-of-fact could return a verdict for the nonmoving party).

Thus, because no reasonable official in the shoes of Defendant Hull would have known her decision to detain Plaintiff violated Plaintiff's due process rights. Defendant Hull is entitled to qualified immunity, and summary judgment on this claim is appropriate.

### B. State Law Claim for Malicious Prosecution

Before commencing suit against a government entity in Washington, a plaintiff is required to file a standard tort claim notice with the appropriate entity. For suing a local governmental entity, a party must file a claim for damages with the entity before commencing a tort action.  RCW 4.96.020.  This provision applies to claims against the local entity itself, as well as its officers, employees, or

ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT ~ 20

1  volunteers. RCW 4.96.020(1). RCW 4.96.020 sets forth the minimum information

2  a standard tort claim form must contain. Similarly, for suing a state entity, a party

3  must file a claim for damages with the risk management division before

4  commencing a tort action against the state or any state officer, employee, or

5  volunteer. RCW 4.92.110. Under both provisions, the plaintiff must then wait

6  sixty calendar days before commencing suit. RCW 4.92.110, 4.96.020(4). "The

7  purpose of claim filing statutes is to 'allow government entities time to investigate,

8  evaluate, and settle claims." *Lee v. Metro. Parks Tacoma*, 183 Wash. App. 961,

9  968 (2014). Substantial compliance with the relevant claim filing statute—

10 meaning that the "statute has been followed sufficiently so as to carry out the intent

11 for which the statute was adopted"—is sufficient. *Id.* at 967-68. However, failure

12 to comply with the statute is grounds for dismissal. *Mercer v. State*, 48 Wash.App.

13 496, 498 (1987) ("The procedures of this statute are mandatory, and compliance is

14 a condition precedent to recovery.").

15     Here, Defendants allege that Plaintiff failed to demonstrate substantial

16 compliance with the relevant statutory provisions for suing local and state

17 governmental entities. In response, Plaintiff has not presented any evidence

18 showing that she substantially complied with these statutes. The only evidence

19 showing any compliance is a standard tort claim notice form, attached to Plaintiff's

20 Complaint, which Plaintiff drafted against the state of Washington, ECF No. 9 at

ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT ~ 21

11; however, there is no evidence to show that this form was ever filed with the proper agency.  Regarding her remaining state claim against Defendant Hull, Plaintiff has presented no evidence of filing a standard tort claims notice form with Adams County, Defendant Hull's employer.[14]  Accordingly, Plaintiff's remaining claim for malicious prosecution, to the extent it is alleged against Defendant Hull or Defendant Stephan, is dismissed because of her lack of compliance with Washington's claim filing statutes.[15]

---

[14] In her briefing, Plaintiff asserts that she also has a state law claim for negligence. ECF No. 76 at 1.  However, her Complaint does not allege any facts to support such a cause of action.  Even if her Complaint can be construed to have alleged such a cause of action, Plaintiff's failure to present any evidence of filing a standard tort claims notice form would prove equally fatal to a claim for negligence.  Moreover, Defendant Hull, a mental health professional, would be immune from such a claim so long as she performed her duty "in good faith and without gross negligence."  RCW 71.05.120; *Estate of Davis v. State Dep't of Corrections*, 127 Wash. App. 833, 840 (2005).  Plaintiff has put forth no argument that Hull acted in bad faith or with gross negligence.

[15] Alternatively, even assuming Plaintiff's form was filed with the State and substantially complied with the statute's content requirements, any malicious prosecution claim against Defendant Stephan is properly dismissed considering (1)

ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT ~ 22

**IT IS ORDERED:**

1.  Defendants Washington State Patrol and Dustin Stephan's Motion and Memorandum for Summary Judgment (ECF No. 60) is **GRANTED**. Defendants Washington State Patrol and Stephan are dismissed.

2.  Defendant Pat Hull's Motion for Summary Judgment (ECF No. 66) is **GRANTED**. Defendant Hull is dismissed.

The District Court Executive is directed to enter this Order, provide copies to counsel, and **TERMINATE Defendants Washington State Patrol, Stephan, and Hull** from the caption.

**DATED** June 19, 2015.



THOMAS O. RICE
United States District Judge

no suit, civil or criminal, has been initiated against Plaintiff, and (2) Defendant Stephan had probable cause, as detailed above, to arrest Plaintiff for driving under the influence, which is an absolute defense. *See Clark v. Baines*, 150 Wash.2d 905, 912 (2004) (en banc) ("[P]roof of probable cause is an absolute defense [to a claim for malicious prosecution].").

ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT ~ 23